IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELAINE RANDAZZO and ANGELO RANDAZZO, Her Husband, | : |
| | : CIVIL ACTION NO. **3:CV-10-0154** |
| | : Magistrate Judge Blewitt |
| Plaintiffs | : |
| v. | : |
| ALDRIC GRANDY and D'ELIA EXPRESS, | : |
| Defendants | : |

**MEMORANDUM AND ORDER**

**I. Background.**

Plaintiffs, Elaine Randazzo and Angelo Randazzo, husband and wife, filed a Complaint on January 21, 2010. Plaintiffs basically allege that Defendant Aldric Grandy, while a truck driver for Defendant D'Elia Express, Inc. ("D'Elia"), acting within the scope of his employment for D'Elia, recklessly and negligently backed up and collided D'Elia's tractor trailer into Plaintiff Elaine Randazzo's vehicle on January 29, 2008, on East Grove Street, Pringle, Luzerne County, Pennsylvania, and caused Elaine serious injuries. Specifically, Plaintiffs summarized their allegations as follows:

> On January 29, 2008, the Plaintiff, ELAINE RANDAZZO, was lawfully stopped behind the Defendant, Aldric Grandy on East Grove Street. Mr. Grandy was operating a tractor and trailer on behalf of the Defendant, D'ELIA EXPRESS, and was stopped at a Stop sign at the corner of East Grove Street and Pringle Street. For reasons unknown to the Plaintiff, Mr. Grandy put his vehicle in reverse and collided with the Plaintiffs' vehicle numerous times, ultimately driving it approximately thirty (30) feet in the opposite direction on East Grove Street. After the Plaintiff

>came to a final rest, the Defendant, ALDRIC GRANDY, then fled the scene.

(Doc. 10, p. 2).

Plaintiffs' Complaint asserts four causes of actions against Defendants. In Count I, Plaintiffs assert a claim of negligence against both Defendants. In Count II, negligent entrustment claim, Plaintiffs allege that Defendant D'Elia was negligent with respect to its hiring, training and supervision of Defendant Grandy, and with respect to its allowing Defendant Grandy to remain in its employ when they knew or should have known that he was not qualified to safely operate its Mac tractor. In Count III, Plaintiffs assert a claim of punitive damages against both Defendants. In their final claim, Count IV, Plaintiff Angelo Randazzo asserts a claim of loss of consortium against Defendants. (Doc. 1).

Jurisdiction of this Court is based on diversity pursuant to 28 U.S.C. § 1332(a), as Plaintiffs reside in Pennsylvania, Defendant D'Elia is a New York corporation, and Defendant Grandy is a New York resident. (Doc. 1, pp. 1-2).

In response to the Complaint, on March 9, 2010, Defendants jointly filed a Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs' allegations of recklessness and Plaintiff' request for punitive damages. (Doc. 4). Defendants' Motion was briefed. (Docs. 5 and 10). Defendants attached an Exhibit to their Motion, namely a copy of Plaintiffs' Complaint, and Plaintiffs attached an exhibit to their Brief, namely copy of the Pennsylvania State Police ("PSP") accident report.

On April 29, 2010, the Court issued a Memorandum and Order, and it denied Defendants' Motion to Dismiss (Doc. 4) with respect to the allegations of ¶'s 19. and 21. of the

Complaint, and with respect to the punitive damages claim of the Complaint, Count III.[1]  (Doc. 18).

On May 10, 2010, Defendants jointly filed an Answer to Plaintiffs' Complaint with Affirmative Defenses.  (Doc. 19).  The Court issued a Scheduling Order on May 12, 2010, and then it twice extended the case management deadlines.  The final dispositive motions deadline was set as February 28, 2011.  (Docs. 20, 25 and 28).

On February 24, 2011, Defendants jointly filed a Rule 56 Motion for Partial Summary Judgment with respect to Plaintiffs' claim for punitive damages (Count III) and claim for negligent entrustment (Count II).  **(Doc. 31).**  Defendants also submitted exhibits in support of their Motion.  (Docs. 31-2 to 31-10).  Defendants simultaneously filed their support brief.  (Doc. 32).  On March 9, 2011, Plaintiff filed their Response to Defendants' Motion.  Plaintiffs also filed their opposition brief with exhibits (A-F) on March 9, 2011.  (Doc. 34).  Defendants did not file a reply brief.

Defendants failed to file a Statement of Material Facts ("SMF") as required by Local Rule 56.1, M.D. Pa.

In their Response to Defendants' Motion, Plaintiff admit that they initially alleged the conduct of Defendant D'Elia Express Inc. was negligent in the entrustment of the commercial motor vehicle to Defendant Grandy, but they state that "these allegations as to D'Elia Express Inc. have been dropped by the Plaintiffs." (Doc. 33, pp. 1-2).  Thus, since Plaintiffs have

---

[1] The parties consented to the jurisdiction of the undersigned for all matters including trial pursuant to 28 U.S.C. § 636(c)(1). (Doc. 17).

represented that they dropped their negligent entrustment claim against Defendant D'Elia Express Inc., and since Plaintiffs do not address Defendants' Motion with respect to this claim in their opposition brief (Doc. 34, pp. 4-11), the Court will grant Defendants' Partial Summary Judgment Motion with respect to this claim (Count II).[2]

Since Defendants' Motion only remains as to Plaintiffs' punitive damages claim against both Defendants (Count III), the Court will not require Defendants to file their SMF as they were obliged to do, pursuant to Local Rule 56.1, M.D. Pa., with their Partial Summary Judgment Motion.[3]

## II. Complaint.

We shall only address the portions of the Complaint relevant to the instant Motion, namely, Count III. As stated, in Count III, Plaintiffs assert a punitive damages claim against both Defendants. (Doc. 1, p. 8). Specifically, it is alleged:

> 23. That the conduct of the Defendant, ALDRIC GRANDY, individually and as a servant, agent, and/or employee of D'ELIA EXPRESS INC., and D'ELIA EXPRESS, INC. as set forth in Counts I and II, demonstrate a reckless indifference and conscious disregard for the safety of the Plaintiff, ELAINE RANDAZZO.

(Doc. 1, p. 8, ¶ 23.).

---

[2]Under Local Rule 7.6, M.D. Pa., Plaintiffs are also deemed as not opposing Defendants' Motion with respect to their negligent entrustment claim.

[3]Counsel for Defendants is directed to follow the Local Rules of this Court with respect to future filings unless expressly excused from doing so by the Court. The Court will not tolerate any violations of the Local Rules by either counsel.

As mentioned, Defendants filed a Partial Motion for Summary Judgment which must now be decided with respect to only Count III of the Complaint. (**Doc. 31**).

### III. Motion for Summary Judgment Standard.

In *Allen v. Fletcher*, 2009 WL 1542767, *2 (M.D. Pa.), the Court outlined the applicable standard to apply when considering a summary judgment motion as follows:

> Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
>
> Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*
>
> Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. See Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2D § 2727 (2d ed.1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
>
> All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party

> to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson,* 477 U.S. at 256-57.
>
> The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

"Material facts" are those which might affect the outcome of the suit. *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir.2004).

**IV. Discussion.**

This is a diversity action over which this Court has jurisdiction under 28 U.S.C. § 1332(a).[4]  As noted, the parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636 (c)(1). (Doc. 17).

Defendants seek the Court to grant them summary judgment with respect to Plaintiffs' claim for punitive damages asserted in Count III of the Complaint. Defendants state that Plaintiffs have failed to produce evidence to support their punitive damages claim. Defendants

---

[4]Pennsylvania substantive law is utilized in this diversity case as this Court sits in Pennsylvania. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Burke v. TransAm Trucking, Inc.*, 605 F. Supp. 2d 647, 651, n. 2 (M.D. Pa.).  Thus, the Court shall apply Pennsylvania law with respect to the analysis of Plaintiffs' punitive damages claim since the events in question all occurred in Pennsylvania. *See Tuck v. Calhoun*, 2011 WL 398285, *1 (M.D. Pa. 2-2-11)("Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case.")(citing *Chamberlain v. Giampapa*, 210 F. 3d 154, 158 (3d Cir. 2000)(citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Both parties correctly utilize the substantive law of Pennsylvania with respect to a punitive damages claim.

argue that Defendant Grandy's testimony shows that he did not realize there was any risk with backing up his tractor trailer after he missed a left turn since he took necessary precautions by first getting out of his vehicle and walking to the back of it. Defendants state that Grandy did not see anyone behind him. Defendants further state that after Defendant Grandy reversed his vehicle, he left the scene of the accident since he did not hear any horns or metal crunching, and since he did not realize he was involved in an accident with Elaine Randazzo's vehicle. Defendants cite to Grandy's deposition testimony, Doc. 31-3.

      Defendants also point out that PSP Trooper Slacktish, who investigated the accident, believed that Grandy did not realize he was in an accident. Defendants state that the Trooper only cited Grandy for careless driving and did not cite Grandy with fleeing the scene of an accident. Defendants cite to Trooper Slacktish's Police Crash Report, Citation and deposition testimony, Docs. 31-4 and 31-5.

      The Police Crash Report also indicated that Defendant Grandy, while driving a tractor trailer, backed up into Plaintiff Elaine Randazzo's Chevrolet car causing damage to it. It further indicated that Defendant Grandy fled the scene after the collision.

      Defendants argue that Plaintiffs' evidence does not show that they had an evil motive or reckless indifference to the rights of the Plaintiffs, and that Grandy did not have an actual realization of risk involved in backing up his tractor trailer. (Doc. 32, pp. 5-7). Defendants argue that Plaintiffs' evidence shows only negligence, namely, that Defendant Grandy reversed the tractor trailer he was driving, which was owned by Defendant D'Elia, when he should have known that Plaintiff Elaine Randazzo's vehicle was behind him. Defendants state there is no

7

evidence to dispute Grandy's testimony that he did not ever see Plaintiff's car before he backed into it, and that he did not realize that he had hit Plaintiff's car. Also, Defendants state that although Ms. Fuller beeped her car horn at the time, she was not sure of Grandy heard it. (*Id*.).

As relief in their present Motion, Defendants request, in part, the Court to grant them summary judgment with respect to Count III of Plaintiffs' Complaint, *i.e.* punitive damages claim.

Plaintiffs contend that they have presented sufficient evidence to allow their claim for punitive damages, under Pennsylvania law, to be decided by a jury. Plaintiffs state that their evidence regarding Defendants' conduct shows reckless indifference to others. (Doc. 34, pp. 7-10). Specifically, Plaintiffs state that their evidence is sufficient to support their punitive damages claim since they have shown that Defendant Grandy reversed the tractor trailer he was operating down a one-way street and struck Plaintiff Elaine Randazzo's car, which pushed her vehicle back 30 feet for about 60 seconds, and that Grandy then fled the scene. (*Id*.). Plaintiffs state that Defendant Grandy missed a turn "approximately 1000 feet away around a blind curve" and that "he then attempted to back down the same path." Plaintiffs state that "a jury can infer that [Gandy] knew of this risk and consciously disregarded [it]." (*Id*., p. 7).

Also, Plaintiffs submit a copy of the PSP Crash Report which, as stated, indicates that Defendant Grandy fled the scene after the accident. (Doc. 34-1). Further, Plaintiffs submit a copy of their expert report of Guntharp. (Doc. 34-2). Guntharp opines as follows:

8

It is my opinion that:

1. On the date of the collision, Aldric Grandy was an experienced driver who had both the knowledge and the training to safely operate his commercial motor vehicle.

2. In spite of knowing that it was unsafe to do so, Aldric Grandy, with reckless disregard for the safety of others, attempted to back up on a public street with full knowledge that such action could jeopardize the well being of anyone who was behind his vehicle.

3. The decision by Mr. Grandy to back on a public street without any assurance that it was safe to do so represented a gross deviation from industry expectations of a safe, professional driver.

4. The callous and reckless disregard exhibited by Aldric Grandy was the primary cause of the collision to Ms. Elaine Randazzo.

(*Id.*, p. 26).

Plaintiffs further rely upon the testimony of Denise Fuller, an eyewitness to the accident. Ms. Fuller testified as follows:

> Q. When you first noticed the tractor trailer, was it in the process of backing up?
>
> A. No. It was still stopped at the stop sign.
>
> Q. Okay. How much time elapsed from when you first noticed the tractor trailer in the stopped position, to when you noticed that it began backing up?
>
> A. It was definitely, like, three or four minutes. I was sitting there waiting, and it was taking forever for the driver to proceed, and I just sat there, and that's when I saw him put his reverse lights on.
>
> Q. When the vehicle began to back up, do you know what, if - - did you do anything?
>
> A. I started to back up and so did the car directly in front of me.

Q. Was anyone behind you?

A. No, because I remember looking in my rearview mirror.

Q. Was anyone coming in the opposing lane of traffic, to your knowledge?

A. A few cars were coming up Pringle and making the right onto Grove to go, then, in the north direction.

Q. Did you see the Randazzo vehicle reverse at any time prior to impact?

A. That, I did not - - I did not see reverse lights on her car. No.

Q. Did you see an impact occur between the tractor trailer and the Randazzo vehicle?

A. Yes.

Q. And where did the impact occur?

A. On her hood when he was backing up.

Q. And what portion of his vehicle struck the rear of the Randazzo vehicle?

A. The rear of his trailer.

Q. What portion? Was it directly the back of it?

A. Directly the back, yes.

Q. How much time elapsed from when you noticed the tractor trailer's backing up and you began to back up, that impact occurred to the Randazzo vehicle?

A. It was immediately.

Q. Do you know whether the trailer on the - - attached to the tractor, pushed the Randazzo vehicle in any way?

10

> A. Yes, it did.
>
> Q. Can you describe for me what you observed?
>
> A. When I was backing up and the car in front of me was backing up, he was just pushing her car back, and then we kept going back, and then just the impact of him pushing her, she ended up on the Pringle Street that was going down.
>
> Q. So she was pushed in - -
>
> A. So she wasn't even on Grove Street anymore. She was actually on Pringle Street.

(Doc. 34-2, pp. 5-6).

Ms. Fuller further testified as follows:

> Q. Okay. What is the distance in your estimation from where Mrs. Randazzo was when impact occurred, to where she traveled after the tractor trailer pushed her back? How far do you believe she traveled?
>
> A. I'm going to say maybe 75 feet.
>
> Q. And is that an estimate?
>
> A. Yes.
>
> Q. How long did it take from when the impact first occurred, to when Mrs. Randazzo came to her final resting place, if you will?
>
> A. I'm going to say it was very quick, maybe three or four minutes, very, very quick.
>
> Q. Okay. Three or four minutes is actually 180 or 240 seconds.
>
> Do you believe that it was 180 to 240 seconds?
>
> A. No, it was quicker than that.
>
> Q. Okay. Taking into consideration that there are 60 seconds

11

to a minute, how long do you believe that took?

A. I'm gonna say 60 seconds.

  MR. ANZALONE: That was the total time of the reverse - -

  MS. JORDAN: Yes.

  MR. ANZALONE: - - while he was striking the Randazzo vehicle?

  MS. JORDAN: Yes.

BY MS. JORDAN:

Q. And is that an estimate?

A. Yes.

Q. And you indicated that it was quick?

A. Yes.

Q. Did you sound your horn at any time while this was occurring?

A. Yes.

Q. And do you know if the other vehicles did?

A. It did sound like the one in front of me was blowing their horn, also.

Q. When the truck was reversing, do you know if the truck was making any noise?

A. No.

Q. Are you familiar with the noise sometimes when vehicles reverse, that there's a beeping noise?

A. Yes.

Q. Do you have a recollection of that noise being made by

>    the truck?
>
>    A.   No. I do not.
>
>    Q.   Okay. Do you know if the operator of the tractor trailer heard your horn?
>
>    A.   I heard it. I would assume he heard the horns.
>
>    Q.   You're assuming. You don't know for certain if he heard it, correct?
>
>    A.   No, I do not.
>
>    Q.   What, if anything, did the truck do after impact occurred? What did you observe?
>
>    A.   He just took off down the road. He put it back in drive and he took off down Grove Street.

(Doc. 34-2, pp. 7-8).

Plaintiffs contend that the evidence is disputed over material facts which precludes the granting of Defendants' Motion for Summary Judgment with respect to Count III of the Complaint, punitive damages claim. The Court agrees with Plaintiffs that in viewing the evidence in a light most favorable to them, material facts are disputed as to whether Defendants' conduct was sufficiently outrageous to support their punitive damages claim and that a jury should decide this issue. *See Tuck, supra*.

As the Court stated in *McCain v. Beverly Health and Rehab. Services, Inc.*, 2002 WL 1565526 * 2 (E.D. Pa.), "[i]n Pennsylvania, punitive damages require 'wilful or wanton conduct or reckless indifference to the rights of others.' 40 P.S. § 1301.812-A(a)." Further, the Court in *Wilson v. Chestnut Hill Healthcare*, 2002 WL 199706 * 6 (E.D. Pa.), stated as follows:

13

Under Pennsylvania law, "[p]unitive damages are appropriate when an individual's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct." *Interact Accessories, Inc. v. Video Trade Int'l, Ltd.*, No. CIV.A.98-2430, 1999 WL 159883, at *3 (E.D. Pa. Mar. 22, 1999) (quoting *Bannar v. Miller*, 701 A.2d 232, 242 (1997)). Punitive damages are only available in matters where "the actor knows, or has reason to know . . . of the facts which create a high degree of risk or physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to that risk," and not in matters involving simple negligence. *Interact*, 1999 WL 159883, at *3.

An "essential fact" needed to support a claim for punitive damages is that the defendant's conduct must have been outrageous. *Brownawell v. Bryan,* 40 Pa.D. & C.3d 604 (1985). Outrageous conduct is an "act done with a bad motive or with reckless indifference to the interests of others." *Focht v. Rabada*, 217 Pa.Super. 35, 38 (1970) (citing comment (b) to § 908 of the Restatement of Torts). "Reckless indifference to the interests of others" of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Evans v. Philadelphia Transp. Co.*, 418 Pa. 567, 574 (1965). Simply pleading outrageous conduct does not satisfy the requirement of stating facts which, if proven, would form a basis for a jury concluding that the conduct was such that an award for punitive damages was warranted. *Brownawell*, 40 Pa.D. & C.3d at 604.

In *Burke v. TransAm Trucking, Inc.*, 605 F. Supp. 2d at 651-652, the Court stated:

In 2005, the Pennsylvania Supreme Court observed:

The standard governing the award of punitive damages in Pennsylvania is settled. Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct.

> *Hutchison v. Luddy,* 582 Pa. 114, 870 A.2d 766, 770 (2005) (quotations and citations omitted) A plaintiff seeking to demonstrate that a defendant's conduct was outrageous must establish the defendant possessed the requisite state of mind. *Hutchison,* 870 A.2d at 770-71. The defendant's action or inaction must be intentional, reckless or malicious. *Id.* at 771. The court explained:
>
> Thus, in Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk.
>
> *Hutchison,* 870 A.2d at 772.
>
> In *Tuck*, the Court recently stated:
>
> > Under Pennsylvania law, a jury may award punitive damages only where evidence shows that a defendant knows, or has reason to know of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act in conscious disregard of, or indifference to such risk. *Burke v. Maassen,* 904 F.2d 178, 181-82 (3d Cir.1990) (citing *Martin v. Johns-Manville Corp.,* 508 Pa. 154, 494 A.2d 1088, 1097 (Pa.1985)). The Pennsylvania Supreme Court has explained as follows: The Pennsylvania Supreme Court has explained the punitive damages standard as follows:
> > The standard governing the award of punitive damages in Pennsylvania is settled. Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful wanton or reckless conduct.
> >
> > *Hutchison v. Luddy,* 870 A.2d X66, 770 (Pa.2005) (internal citations omitted).
>
> 2011 WL 398285, *6.

The Court finds, based on Plaintiffs' evidence, including the testimony of Ms. Fuller and Guntharp's Expert Report, as well as the PSP Crash Report, that the conduct of Defendants in

15

this case could be found by a fact finder to be wanton and recklessly indifferent to the safety and well-being of Plaintiff Elaine Randazzo. *See Tuck, supra*.

Specifically, the PSP Crash Report, states in part as follows:

> Crash Synopsis
>
> This crash occurred as Unit #1 backed into Unit #2, then pushed Unit #2 backwards approx. 30 ft. causing damage.
>
> Narrative
> This crash occurred as Unit #1 was attempting to back up on Grove St. At this time, Unit #1 backed up into Unit #2 causing damage. Unit #1 continued to back up pushing Unit #2 backwards approx. 30 ft. Unit #1 then left the scene heading west on Grove St.
>
> On 1/29/08 at approx. 1310 hrs. I interviewed Oper. #2 at the scene. Oper #2 related that she was behind Unit #1. He Unit #1 started backing up. Oper. #2 related that Unit #1 then pushed her back approx. 30 ft.
>
> On 1/29/08 at approx. 1330 hrs. I interviewed Oper. #[1] Oper. #1 related that he backed up on Grove St. Oper. #1 related he then continued on Grove St. Oper. #1 related that he did not realize he had hit another vehicle.

(Doc. 31-4, p. 6).[5]

Additionally, the Police Crash Report stated as follows:

> On 01/29/08 at approx. 1335 hrs. I interviewed Witness #1 at the scene. Witness #1 related that she saw Unit #1 push Unit #2 backwards.
>
> On 02/08/08 at approx. 1959 hrs. I interviewed Witness #1. Witness #1 related she was behind Unit #2 when unit #1 started to back up striking Unit #2. Witness #1 related she's not sure if he saw the car or not.

---

[5]Unit #1 was the D'Elia tractor trailer operated by Defendant Grandy, and Unit #2 was the vehicle operated by Plaintiff Elaine Randazzo.

>Witness #1 related that she and Unit #2 beeped their horn but she's not sure if he heard them.

(Doc. 31-4, p. 6).

Moreover, the PSP Crash Report indicated that one of the witnesses to the accident (Witness #1) stated that both she and Elaine Randazzo beeped their horns when Defendant Grandy started to back up and struck Elaine's vehicle.

The Court finds that the instant case is very similar to the recent *Tuck* case (the evidence in *Tuck* showed that "the best way to back a tractor trailer is not to do it all"), and that based on *Tuck*, the evidence in our case is sufficient to show disputed material facts with respect to Plaintiffs' punitive damages claim against Defendants. The Court finds that the evidence is disputed as to whether both Grandy and Defendant D'Elia exhibited reckless, willful and wanton behavior. *See Came v. Micou*, 2005 WL 1500978, * 5 (M.D. Pa.); *Sauer v. Murray*, Civil No. 05-1517, M.D. Pa., 6-21-07 Memorandum; *Tuck, supra*.

Accordingly, the Court will deny Defendants' Motion for Summary Judgment (Doc. 31) with respect to Plaintiffs' punitive damages claim of the Complaint, Count III.

An appropriate Order and Judgment will be issued.

>**s/ Thomas M. Blewitt**
>**THOMAS M. BLEWITT**
>**United States Magistrate Judge**

**Dated: May 12, 2011**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELAINE RANDAZZO and ANGELO RANDAZZO, Her Husband, | : <br> : CIVIL ACTION NO. **3:CV-10-0154** <br> : <br> : Magistrate Judge Blewitt |
| Plaintiffs | : |
| v. | : |
| ALDRIC GRANDY and D'ELIA EXPRESS INC., | : |
| Defendants | : |

## **ORDER AND JUDGMENT**

**AND NOW,** this **12th** day of **May, 2011**, **IT IS HEREBY ORDERED THAT:**

1. Defendants' Partial Summary Judgment Motion **(Doc. 31)** with respect to Plaintiffs' negligent entrustment claim (Count II) against Defendant D'ELIA EXPRESS INC. is **GRANTED**.

2. Judgment is entered in favor of Defendant D'ELIA EXPRESS INC. and against Plaintiffs with respect to the negligent entrustment claim (Count II).

3. Defendants' Partial Summary Judgment Motion **(Doc. 31)** with respect to Plaintiffs' punitive damages claim of the Complaint, Count III, is **DENIED**.[6]

                                          **s/ Thomas M. Blewitt**
                                          **THOMAS M. BLEWITT**
                                          **United States Magistrate Judge**

**Dated: May 12, 2011**

---

[6] By separate Orders, the Court will schedule a pre-trial conference and then the jury trial date.